UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FELICIA VITALE AND LOUIS VITALE, | : : : | Civil Action No.08-3472 (FLW) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : |  |
| CARRIER CLINIC, INC., | : : |  |
| Defendant. | : : |  |

**WOLFSON, United States District Judge:**

Before this Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Carrier Clinic, Inc. ("Defendant" or "Carrier Clinic"). This case arises out of the electroconvulsive therapy ("ECT") that Felicia Vitale ("Mrs. Vitale") received while being treated for Obsessive Convulsive Disorder ("OCD") at Carrier Clinic. Plaintiffs Mrs. Vitale and Louis Vitale ("Mr. Vitale") bring this suit alleging medical malpractice against Carrier Clinic for its carelessness, recklessness, and negligence which caused Mrs. Vitale to sustain severe and permanent injuries and Mr. Vitale's lost companionship and consortium of his wife. Plaintiffs' Complaint alleges that Carrier Clinic failed to obtain Mrs. Vitale's informed consent and negligently diagnosed and treated Mrs. Vitale with ECT after Mrs. Vitale's complaints of adverse effects. Defendant, as a defense, raises Plaintiff's purported failure to comply with N.J.S.A. 2A:53A-27, which requires that an Affidavit of Merit be served by a plaintiff in a malpractice action against a licensed person. In accordance with the statute, Plaintiffs submitted an Affidavit of Merit by a general practitioner, Dr. Tedesco. Defendant, however, claims Dr.

Tedesco's Affidavit of Merit does not meet the requirements under the statute because Dr. Tedesco is not a specialist in psychiatry. The Court has reviewed the parties' submissions, and for the reasons stated below, Defendant's Motion to Dismiss is granted.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Facts

Since Defendant moves to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6), the following version of events assumes Plaintiffs' allegations to be true.

Carrier Clinic owns and operates a psychiatric hospital located in Belle Mead, New Jersey. Compl. ¶ 3. On June 2, 2006, Mrs. Vitale, began treatment at Carrier Clinic for OCD. Id. ¶ 10. Starting on June 5, 2006, Carrier Clinic began treating Plaintiff's OCD with ECT. Id. ¶ 11. She underwent nine bilateral ECT treatments, individually administered on June 5, 7, 9, 12, 14, 16, 19, and 23, 2006. Ex. B to Br. in Opp. ("Ex. B") ¶ 7. According to Carrier Clinic's medical records, at the time of her sixth ECT treatment on June 16, 2006, Plaintiff complained to Carrier Clinic of "some forgetfulness for small details." Compl. ¶ 12. On June 19, 2006, Carrier Clinic's officials documented Mrs. Vitale's short-term memory loss. Ex. B at 8. Despite this, Plaintiff alleges that Carrier Clinic continued to recommend and treat Plaintiff's disorder with ECT. Compl. ¶ 13. On June 23, 2006, Mrs. Vitale again complained of increased memory problems and that she was very upset with her deteriorating memory. Ex. B. ¶ 8.

On July 5, 2006, a conversation between Mr. Vitale and Carrier Clinic employees revealed that his wife continued to experience memory disturbance, and that she was unable to recall names of familiar acquaintances and directions to stores. Legal Brief in Opposition to

2

Dismiss (Pl.'s Br. in Opp.) at 10. A Carrier Clinic note on July 18, 2006, attached to Mrs. Vitale's file, references another conversation with Mr. Vitale in which he indicated that he was very concerned with his wife's worsening memory. Id. That same note recommended that Mrs. Vitale continue to be treated with ECT. Id. At this time, Mr. and Mrs. Vitale discontinued Mrs. Vitale's treatment at Carrier Clinic. Id.  A comprehensive neuropsychological evaluation was carried out at the Rusk Institute in July and October 2007. Ex. B. ¶ 9.  The report concluded that following ECT treatment from Carrier Clinic: "Mrs. Vitale demonstrated significant global deficits in cognition, i.e. her attention, memory, psychomotor speed, executive functioning, and perceptual-motor abilities were all significantly impaired." Id.  As a result, Plaintiffs decided against a return to Carrier Clinic for further ECT treatment. Id.

      Plaintiff states three causes of action. First, Plaintiff claims that due to Carrier Clinic's carelessness, recklessness, and negligence that she sustained severe and permanent injuries, including among others things: cognitive defects, severe difficulty with concentration, difficulty with organization, difficulty with word finding, stress, depression, and migraine headaches, all of which are permanent in nature and continuing into the future. Compl. ¶ 18. Second, Plaintiffs allege that Carrier Clinic failed to properly obtain Plaintiff's informed consent for the treatment. Id. ¶ 21.  Had she been properly informed about the risks of ECT, Plaintiff alleges that she would have forgone such treatment.  Id.  ¶ 22.  Finally, Mr. Vitale alleges that as a result of his wife's condition, he was deprived of the society, companionship, and consortium of his wife,  and was required to care for her and spend funds for her medical treatment.  Id.  ¶ 29.

      Generally, N.J.S.A. 2A:53A-27 requires that a plaintiff in a medical malpractice action

3

file an Affidavit of Merit against a licensed person. N.J.S.A. 2A:53A-27.  Because a healthcare facility is considered a licensed person, the Affidavit of Merit must be signed by an "appropriate licensed person." N.J.S.A. 2A:53A-26(j). The signing expert must "have particular expertise in the general area or specialty involved." Cornblatt v. Barow, 153 N.J. 218, 241 (App. Div. 1997). In support of their claims, Plaintiff submitted an Affidavit of Merit from Dr. Salvatore Tedesco, M.D. ("Dr. Tedesco"), a board certified surgeon. Ex. A to Br. in Opp. ("Ex. A"). Dr. Tedesco concluded "there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment and practice that is the subject of the complaint, fell outside acceptable professional medical standards or treatment practices." Ex. A.  In further support of their claims, Plaintiffs submitted a second Affidavit of Merit from Dr. Robert Goldstein, M.D. ("Dr. Goldstein"), a board certified psychiatrist.[1] Ex. B. Dr. Goldstein concluded that "there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment and practice that is the subject of the complaint, fell outside acceptable professional medical standards and treatment practices." Ex. B.  At issue here is whether Dr. Tedesco, a general practitioner, qualifies under the statute as an "appropriate licensed peron."

     Initially, Plaintiffs argue an affidavit from a board certified psychiatrist is unnecessary because ECT bears no connection to psychiatric board certification.  Plaintiffs also invoke the

---

[1] While the statute only provides a plaintiff sixty days from the filing of the defendant's answer to submit an Affidavit of Merit, courts have the discretion to grant a single sixty day extension. See N.J.S.A. 2A:53A-27.  Thus, for the purposes of this motion, the Court will assume that Plaintiffs would have been entitled to such an extension; nevertheless, the second Affidavit of Merit, from Dr. Goldstein, was submitted after the 120 day window to submit the affidavit and after the filing of this motion.

4

common knowledge exception to the Affidavit of Merit Statute, which requires no Affidavit of Merit where a lay person could determine, without expert testimony, that Defendants' misconduct bespeaks negligence. Finally, Plaintiffs argue, notwithstanding Dr. Tedesco's lack of familiarity with psychiatry and ECT, that they substantially complied with the New Jersey Statute.

Defendant seeks dismissal of Complaint, arguing that: (1) Dr. Tedesco is not an appropriate licensed person to sign an Affidavit regarding the care provided by Carrier Clinic because he does not have education or experience in psychiatry; (2) the second Affidavit of Merit from Dr. Goldstein was untimely and not filed within the statutorily prescribed 120 days; (3) the common knowledge exception is not applicable here because a jury would need more than their ordinary understanding and experience to determine negligence as to how or why ECT caused the stated memory loss; and (4) Plaintiff has not substantially complied with the New Jersey Affidavit of Merit Statute because Plaintiff does not meet all elements of the test.

**B.     Procedural Background**

On July 11, 2008, Plaintiffs initiated this action in U.S. District Court in the District of New Jersey. On December 23, 2008, Defendant filed its Answer to Plaintiff's Complaint. Thereafter, Defendant filed the present Motion to Dismiss Plaintiffs' Complaint on May 20, 2009. For the reasons that follow, the Court will grant Defendants' Motion to Dismiss Plaintiffs' Complaint.

**II.    DISCUSSION**

**A.     Standard of Review**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should [*11] not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009).  Second, "only a complaint that states a plausible claim for relief

survives a motion to dismiss." Id.   Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the  assumption of truth." Id. at 1949.

      **B.**      **Affidavit of Merit does not require Board Certification**

            **1.**      **Dr. Tedesco's Affidavit of Merit**

Initially, Plaintiffs argue that the Affidavit of Merit signed by Dr. Tedesco is sufficient because conducting an ECT procedure does not require board certification. Without citing any relevant case law, Plaintiffs contend that the modifying statute seems to indicate "that a drafter of an Affidavit of Merit need have [sic] certified specialized training to prepare such a document, if, and only if, the person against whom the affidavit is to be offered had been applying the procedures he was employing when the alleged negligence occurred were among these for which he was required to have performed to attain board recognition in his specialty." Pl.'s Br. in Opp. at pp. 7-8. Based on this interpretation of the statute, Plaintiffs suggest that because the field of ECT does not require board certification and is not recognized by the American Board of Psychiatry and Neurology,[2] specialized psychiatric knowledge was not

---

[2] Plaintiffs posit that general practitioners can provide meaningful insight into the standard of care associated with the administration of ECT based on the suggestion from experts in the field that it can take less than six months to learn how to administer the procedure.  It very well may be the case that general practitioners can learn how to administer ECT after six months; however, Dr. Tedesco has not taken one day, let alone six months, to apprise himself of the nuances of ECT, or at the very least, to witness an ECT session. Nor does Plaintiff indicate that facilities like Carrier Clinic employ general practitioners to administer ECT to its patients. Moreover, by suggesting that general practitioners can learn how to administer ECT from specialists in the field, Plaintiffs generally concede that there are certain medical professionals specialized to practice ECT and understand the procedure in a particularized way that general practitioners do not.

7

required of Carrier Clinic employees to perform ECT, and thus, the doctors employing ECT at Carrier Clinic were acting as a general practitioners. Id. at 9.  Plaintiffs request that this Court find Dr. Tedesco is an appropriate person to submit the Affidavit of Merit because he treats patients as a general practitioner.

Defendant contends that because Dr. Tedesco is board certified in surgery, and not in psychiatry, that he is not an appropriate licensed person under the New Jersey Statute to sign the Affidavit of Merit against Carrier Clinic. To that end, Defendant argues that Dr. Tedesco is not qualified to determine whether the care provided to Mrs. Vitale fell outside the proper and accepted psychiatric practice and procedure.  For support, Defendant points out that it only employs board-certified psychiatrists to administer ECT treatments, a fact that compels a plaintiff to file an Affidavit of Merit certified by an appropriately licensed person who specializes in psychiatry.  While Dr. Tedesco may be qualified to give his expert opinion on the professional standards of a surgeon or general practitioner, Defendant contends that he is not qualified to do the same for psychiatric standards because the professional standards required are different. The Court agrees.

When a plaintiff seeks damages allegedly caused by malpractice or negligence, the plaintiff must provide an affidavit from an appropriate licensed person stating that there exists a reasonable probability that the care rendered by the defendant fell outside acceptable professional standards. N.J.S.A. 2A:53A-27.  The New Jersey Affidavit of Merit statute, N.J.S.A. 2A:53A-27, was enacted "to curtail the filing of frivolous malpractice actions." Zamft v. Cornell, 309 N.J. Super. 586, 593 (N.J.Super.A.D. 1998); see also In re Petition of Hall, 147

N.J. 379, 391 (1997) ("[The purpose was] to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation"). The statute reads:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

N.J.S.A. 2A:53A-27.

This statute, as modified by N.J.S.A. 2A:53A-41, seeks to define who is an appropriate licensed person, which Plaintiffs read as requiring a specialist only where the alleged negligent conduct falls within the category of medical procedures that require board certification. However, the suggestion that a specialist is not required to certify an affidavit of merit when a board certified physician performs procedures that are not recognized as part of the knowledge or skill required to be certified to a specific board is far too narrow a construction of the Affidavit of Merit Statute's definition of "appropriate licensed person." It does not follow that every procedure outside the requirement for a board certification constitutes practice on which any general practitioner could speak with authority. Plaintiffs do not cite, nor is the Court aware of, any case that has read the Affidavit of Merit Statute as narrowly as Plaintiffs suggest. To the contrary, New Jersey courts require the signing expert to "have particular expertise in the general area or specialty involved." Cornblatt v. Barow, 153 N.J. 218, 241 (App. Div. 1997).

Additionally, Plaintiffs distort the nature of their allegations in an attempt to survive the present motion. In their Complaint, Plaintiffs do not merely allege that the act of administering ECT was done in a manner that falls below the accepted standard of care in the profession, but attack the very decision to recommend ECT in the first instance and to <u>continue</u> administering ECT treatment <u>after</u> Plaintiffs' numerous complaints: "Among other things, the defendant CLINIC. . . in ignoring and failing to heed the significance of the plaintiff's signs and symptoms; in failing to properly and timely diagnose plaintiff's condition, in improperly and negligently continuing ECT treatments." Compl. ¶17. In offering Dr. Tedesco as an "appropriate licensed person, Plaintiffs do not indicate that he has any experience with the side effects of ECT, or that as a general practitioner, without specialized training, he would be adequately qualified to make a decision concerning the continuation of ECT treatments after the appearance of side effects. Even more simply, the initial decision to prescribe ECT is a decision uniquely reserved to mental health specialists, such as a psychiatrist, and not one to be made by a general practitioner inexperienced with OCD and other psychiatric disorders. Since Plaintiffs have chosen to challenge Defendant's decision-making process, they are required to file an Affidavit of Merit by a licensed professional uniquely qualified to evaluate those decisions.

Here, Carrier Clinic specifically employed doctors trained in psychiatry to make decisions regarding the administration of ECT and to perform ECT treatments on Mrs. Vitale. Under the statute, and undisputed by the parties, a healthcare facility is considered a "licensed person," <u>N.J.S.A.</u> 2A:53A-26(j), requiring that the Affidavit of Merit served against Carrier Clinic must be signed by an "appropriate licensed person." <u>N.J.S.A.</u> 2A:53A-27. Because the

New Jersey Statute requires the signing expert to "certify that a reasonable probability exists that the defendant in question deviated from professional standards," In re Hall, 147 N.J. 379, 392 (1997), the medical professional must necessarily have some familiarity of the procedure at issue in the malpractice litigation, or at the very least, the same familiarity as the licensed person who is accused of deviating from accepted medical standards .  Certainly, Plaintiffs cannot suggest that Dr. Tedesco satisfies either requirement.

The Court rules that since Dr. Tedesco is neither board certified in psychiatry, nor does he represent that he has any experience in psychiatric treatment, he does not have the education or experience in psychiatry to determine whether the care provided at Carrier Clinic fell outside the proper psychiatric practice and procedure.[3]  Dr. Tedesco is not qualified to offer an expert opinion as to the professional standards of Carrier Clinic, a psychiatric facility, as he is a trained surgeon and general practitioner. Accordingly, the Court holds that Dr. Tedesco is not an "appropriately licensed person" to sign an Affidavit of Merit in these particular circumstances, and Plaintiffs' argument fails.

### 2. Dr. Goldstein's Affidavit of Merit

Plaintiffs also submitted an Affidavit of Merit from Dr. Goldstein, a board certified psychiatrist, and maintains that his affidavit is in fact, unnecessary, but further demonstrates the merit of Plaintiffs' claims. Plaintiffs argue that Dr. Goldstein's conclusions support their claim

---

[3] Again, the decision to administer ECT is a decision traditionally reserved to psychiatrists.  That the practice itself may, after minimal training, be performed by a general practitioner, does not qualify that person to determine whether ECT is an appropriate treatment, or whether to continue the treatment in light of complaints of possible adverse effects.

11

that the case is not frivolous and that Plaintiffs made an effort to determine so prior to bringing this action. Defendant argues that Dr. Goldstein's Affidavit of Merit was submitted after the 120 day window following the submission of Defendant's answer, and thus, is not valid, and as such, Plaintiffs' Complaint should be dismissed.

N.J.S.A. 2A:53A-27 states that an Affidavit of Merit must be served by a plaintiff within 60 days "following the date of filing of the answer to the complaint by the defendant," or 120 days if the plaintiff requests an extension. N.J.S.A. 2A:53A-27. Carrier Clinic filed its Answer to Plaintiffs' complaint on December 23, 2008, which gave Plaintiffs until April 20, 2009 to serve an Affidavit of Merit on Carrier Clinic. The standard of dismissal for failure to comply with a statute such as the one above is as follows: "dismissal under the statute based on a violation of the affidavit requirement would be without prejudice only if there are extraordinary circumstances. Absent extraordinary circumstances, a failure to comply with the statute that requires a dismissal would be with prejudice." Accilien v. Conrail, 323 N.J. Super 595, 599-600 (App. Div. 1999). Plaintiffs have not identified any extraordinary circumstances underlying their failure to comply with the statute. Accordingly, Dr. Goldstein's Affidavit of Merit is untimely and Plaintiffs' Complaint is dismissed with prejudice for Plaintiffs' failure to submit an Affidavit of Merit signed by an appropriately licenced person pursuant to N.J.S.A. 2A:53A-27.

### C.  Common Knowledge Exception

Alternatively, Plaintiffs argue that an Affidavit of Merit is not necessary in this case because the injuries Mrs. Vitale sustained as a result of Defendant's alleged misconduct could have been discovered by any layperson, without the need for expert testimony. Plaintiffs

postulate that it does not require any special medical knowledge to identify a likely relationship between the administration of the ECT and the development of memory loss because Mrs. Vitale did not have any history of memory loss prior to the ECT and after worsening symptoms of memory loss were reported treatment continued anyway.  Under these circumstances, the argument goes, expert testimony is not required to prove negligence because the medical analysis is easily comprehended and apparent from reading Plaintiffs' Complaint. Defendant counters that the common knowledge exception is not applicable here because a jury would need more than their ordinary understanding and experience to determine the negligence, if any, in these circumstances.

      The common knowledge doctrine exempts a party from filing an Affidavit of Merit where the defendant's negligence can be determined by a layperson using his ordinary understanding and experience, rather than specialized knowledge of experts. Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999).  The exception is best illustrated by the facts of the leading case on the common knowledge exception.  In Hubbard v. Reed, the a dentist was sued for allegedly extracting the wrong tooth from a child.  168 N.J. 387, 390 (2001); see also Palanque v. Lambert-Wooley, 168 N.J. 398, 406-07 (2001) (applying common knowledge exception where medical records revealed that a doctor's diagnosis was based on a mistaken reading of the laboratory report because a person of ordinary understanding and experience can judge whether defendant acted with reasonable care when she misread a pregnancy test). Given that any juror without medical expertise could determine that the decision to extract the wrong tooth was tortious conduct, the Hubbard Court held that an Affidavit of Merit was not required.

Id. The Court held that "an affidavit need not be provided in common knowledge cases when an expert will not be called to testify 'that the care, skill or knowledge . . . [of the defendant] fell outside acceptable professional or occupational standards or treatment practices.'" Id. (quoting N.J.S.A. 2A:53A-27). Therefore, in a common knowledge case:

> whether a plaintiff's claim meets the threshold of merit can be determined on the face of the complaint. Because defendant's careless acts are quite obvious, a plaintiff need not present expert testimony at trial to establish the standard of care. In other words, because the issue is not "peculiarly within the knowledge of a medical . . . practitioner," the case is treated as an ordinary negligence action in which a jury can determine without the aid of experts whether a defendant acted with reasonable care.

Palanque v. Lambert-Wooley, 168 N.J. at 406 (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469-70 (1999)).

Plaintiffs argue that this case is similar to Hubbard because the negligence here is apparent to a layperson and does not require medical knowledge to understand that it is negligent to continue ECT despite Mrs. Vitale's complaints of memory loss. However, as Defendant correctly argues, Hubbard and Palanque are distinguishable from this case. In Hubbard and Palanque, a jury would not need additional knowledge to determine negligence because a juror can use his experience to determine that a wrong tooth was pulled and that a pregnancy test was read wrong. Here, a layperson's common knowledge and experience would not enable him to evaluate the appropriateness of Carrier Clinic's treatment. Mr. and Mrs. Vitale do not allege any actions taken by Carrier Clinic that a lay person would understand as negligent without the assistance of expert testimony. The allegedly tortious conduct at issue, whether ECT treatments should have been continued despite Mrs. Vitale's complaints of memory loss, and whether the

14

memory loss was caused by the ECT treatments, is "'peculiarly within the knowledge of a medical. . .practitioner,'" Palanque, 168 N.J. at 406 (quoting Estate of Chin v. Saint Barnabas Medical Center, 160 N.J. 454, 469-70 (1999)), and not, as Plaintiffs suggest, a careless act quite obvious to a layperson.[4]  Stated another way, the alleged misconduct here is not of the type that any layperson would understand to be negligent, i.e. misreading a chart, leaving a scalpel in someone's body after surgery.  Indeed, ECT is a complex procedure that presumably, many jurors have not experienced, and the jurors would be unable to determine whether Carrier Clinic was negligent without first hearing expert testimony concerning the side effects of ECT, and the proper manner in which to monitor its administration.  Accordingly, the common knowledge exception does not apply in this case and a properly executed Affidavit of Merit is needed to allege negligence on the part of Carrier Clinic.

### D. Substantial Compliance Test

The equitable doctrine of substantial compliance was enacted to prevent harsh results that may occur where a pleading complies with a statute's purpose but is technically flawed.  See Galik v. Clara Maas Medical Center, 167 N.J. 341, 351 (2001). The doctrine of substantial compliance is used to "avoid technical defeats of valid claims," Zamel v. Port of New York Auth., 56 N.J. 1, 6 (1970), and requires: "(1) the lack of prejudice to the defending party; (2) a

---

[4] The Hubbard Court emphasized that the common knowledge exception should not be so liberally construed as to swallow the requirements of the Affidavit of Merit Statute whole. Hubbard, 168 N.J. at 397 ("Indeed, the wise course of action in all malpractice cases would be for plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial.  In most such cases, expert testimony will be required to establish both a standard of care and breach of that standard by the defendant, and a plaintiff who fails to present testimony could be subject to involuntary dismissal pursuant to Rule 4:37-2(b)").

series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute." Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 353, 771 A.2d 1141, (2001).

First, Plaintiffs argue that since this case has not advanced very far that there has not been any prejudice. Second, as the purpose of the Affidavit of Merit Statute is to weed out frivolous cases from the court as early as possible, Plaintiffs argue that they took sufficient steps to comply with the statute, submitting an Affidavit of Merit from Dr. Tedesco, who they believed was an appropriate person, and later consulting Dr. Goldstein, a psychiatrist, who ultimately concurred with Dr. Tedesco's evaluation. Third, Plaintiffs contend that they timely filed the affidavit of Mr. Tedesco, and fourth, that notice to Defendant of Plaintiffs' claim was timely.  Lastly, Plaintiffs argue that they did not have proper documentation available to them to determine whether Dr. Tedesco was an appropriate person to comply with the statute, which further excuses their failure to strictly comply.

In response, Defendant argues that it has been prejudiced because Plaintiff submitted Dr. Goldstein's Affidavit of Merit well after the 120 day window to submit it, and "plaintiff's failure to serve the Affidavit within 120 days is tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice." Ferreira v. Rancocas Orthopedic Associates, 178 N.J. 144, 149 (2001) (citing N.J.S.A. 2A:53A-29; Palanque v. Lambert-Wooley, 168 N.J. at 404). Defendant also contends that Plaintiffs have not complied with the New Jersey Statute because Plaintiffs admit to inadvertently applying New York law, which allows any

16

licensed person to submit an Affidavit or Merit, while the New Jersey Statute requires an "appropriately licensed person." Pls.' Ltr. Br. p.1.  Defendants also point out that while Plaintiffs claim to have consulted an expert in psychiatry, Dr. Goldstein, prior to the 120 day window, they did not submit an Affidavit of Merit from him until well after the statutory period expired and have failed to properly serve Defendant with that affidavit.  Defendant also argues that although Plaintiffs did timely submit an Affidavit of Merit from Dr. Tedesco, it was inadequate because he was not a psychiatrist, and thus, Plaintiffs did not comply with the statute.  Finally, Defendant suggests that Plaintiffs' explanation of attorney inadvertence for why strict compliance was not met is not reasonable.

The New Jersey Affidavit of Merit Statute, N.J.S.A. 2A:53A-27, was enacted "to curtail the filing of frivolous malpractice actions." Zamft v. Cornell, 309 N.J. Super. 586, 593 (N.J.Super.A.D. 1998), striking a proper balance "between preserving a person's right to sue and controlling nuisance suits." Palanque, 168 N.J. at 404 (quoting Office of the Governor, News Release 1 (June 29, 1995)).  As to the first requirement for the substantial compliance test, though Defendant may not have been prejudiced, that does not excuse Plaintiffs' failure to strictly comply if their Affidavit of Merit nevertheless frustrates the statute's initial purpose. The Court rules that the second and third requirements have not been met. Plaintiffs could not have complied with the purpose of the statute as Dr. Tedesco's opinion on the standard of care Carrier Clinic should have exercised is irrelevant, because, as stated supra, Dr. Tedesco lacks the knowledge to properly evaluate Carrier Clinic's alleged misconduct. See Galik, 167 N.J. at 358

17

(questioning whether a doctor's unsworn report, albeit timely, was substantively adequate).[5] Nowhere does Dr. Tedesco suggest that he ever has seen or performed an ECT treatment, or even dealt with any treatment in the field of psychiatry. Thus, Dr. Tedesco could not honestly say whether Plaintiffs' suit has merit, and thus fails to satisfy the statute's mandate that "there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice, or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27.  That Dr. Tedesco's affidavit does nothing to advance the purpose of the statute proves fatal to Plaintiffs' substantial compliance argument.

As to the fourth requirement, Plaintiffs did give Defendant reasonable notice of their claim when it submitted its Complaint. The Complaint notes that the medical care and treatment that Mrs. Vitale received at Carrier Clinic was allegedly careless and negligent, and not in accordance with the proper and accepted psychiatric practice and procedure.  Compl. ¶ 16.  The Complaint goes on to explain the Mrs. Vitale allegedly sustained severe and permanent injuries as a result of the ECT treatment from Carrier Clinic. Id. ¶ 17.  These allegations sufficiently notify Carrier Clinic that expert medical testimony may be needed to adjudicate Plaintiffs' claims.  Although Plaintiff did give Carrier Clinic reasonable notice of its claim, it does not

---

[5]The substantial compliance test was intended to correct procedural deviations from a statute, not substantive ones, which have occurred here. See Galik 167 N.J. at 255 (holding that there had been substantial compliance with the statute where plaintiff served unsworn expert reports on the defendants eight months prior to litigation, and plaintiff's counsel explained that he thought he had exceeded his obligations under the Affidavit of Merit Statute).

excuse the absence of meeting the second and third requirements under the substantial compliance test. See Galik 167 N.J. at 354 ("Satisfying those elements guarantees that the underlying purpose of the state is met and that no prejudice is visited on the opposing party").

Moreover, "[c]arelessness, lack of circumspection, or lack of diligence on the part of counsel are not extraordinary circumstances which will excuse missing a filing deadline." Palanque, 168 N.J. at 405 (citing Burns v. Belafsky, 326 N.J. Super. 462, 470 (1999)). Plaintiffs admit to mistakenly following New York law and not the New Jersey Statute that is pertinent here. Pls.' Ltr. Br. p.1. The New Jersey Statute explicitly states that it requires an appropriately licensed person must submit an Affidavit of Merit. Plaintiffs cannot convincingly argue that they have taken steps to comply with the New Jersey Statute if they admittedly were following New York law when they submitted Dr. Tedesco's affidavit. Because Plaintiff has not substantially complied with the New Jersey Statute, Plaintiffs' Complaint is dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss.

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Dated July 31, 2009